1  Matthew R. Bainer, Esq. (S.B. #220972)
   Hannah R. Salassi, Esq. (S.B. #230117)
2  **SCOTT COLE & ASSOCIATES, APC**
   1970 Broadway, Ninth Floor
3  Oakland, California 94612
   Telephone: (510) 891-9800
4  Facsimile:  (510) 891-7030
   Email:  mbainer@scalaw.com
5  Email:  hsalassi@scalaw.com
   Web:    www.scalaw.com
6
   Attorneys for Representative Plaintiff
7  and the Plaintiff Class

8              **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

10

11  GILBERT SALINAS, individually,          )   **Case No. 12-CV-02894-WHO**
    and on behalf of all others similarly   )
12  situated,                               )   **CLASS ACTION**
                                            )
13                        Plaintiff,        )   **NOTICE OF MOTION AND MOTION;**
                                            )   **MEMORANDUM OF POINTS AND**
14  vs.                                     )   **AUTHORITIES IN SUPPORT OF**
                                            )   **PLAINTIFF'S UNOPPOSED MOTION FOR**
15  KRAFT FOODS GLOBAL, INC., and           )   **AN ORDER:**
    DOES 1 through 100, inclusive,          )   **(1)    GRANTING FINAL APPROVAL OF**
16  inclusive,                              )   **       CLASS      ACTION     SETTLEMENT**
                                            )   **       AGREEMENT;**
17                        Defendants.       )   **(2)    AWARDING ATTORNEYS' FEES AND**
                                            )   **       COSTS TO CLASS COUNSEL;**
18                                          )   **(3)    APPROVING ENHANCEMENT**
                                            )   **       AWARD TO THE CLASS**
19                                          )   **       REPRESENTATIVE;**
                                            )   **(4)    AWARDING REIMBURSEMENT OF**
20                                          )   **       CLAIMS ADMINISTRATION FEES**
                                            )   **       AND COSTS; AND**
21                                          )   **(5)    ENTERING JUDGMENTOF**
                                            )   **       DISMISSAL WITH PREJUDICE**
22                                          )
                                            )   **Date:    November 13, 2013**
23                                          )   **Time:     2:00pm**
                                            )   **Dept.:   Courtroom 2, 17th Floor**
24  _____        )   **Judge:   Honorable William H. Orrick**

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**NOTICE OF MOTION**

**TO EACH PARTY AND TO EACH ATTORNEY OF RECORD IN THIS ACTION:**

**NOTICE IS HEREBY GIVEN** that on November 13, 2013 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, seventeenth floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, before the Honorable William H. Orrick, Plaintiff Gilbert Salinas will, and hereby does, move the Court for an Order: (1) granting final approval of the parties' class action settlement, (2) awarding attorneys' fees and costs to Class Counsel, (3) approving enhancement award to the class representative, (4) awarding reimbursement of claims administration fees and costs and (5) entering Judgment of Dismissal with Prejudice.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Hannah R. Salassi, Esq. and exhibits thereto, filed herewith, the arguments of counsel and all other pertinent records contained in this Court's files.

Dated: October 9, 2013

**SCOTT COLE & ASSOCIATES, APC**

By:   /s/ Hannah R. Salassi
      Hannah R. Salassi, Esq.
      Attorneys for Representative Plaintiff
      and the Plaintiff Class

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS............................1

III.   SUMMARY OF SETTLEMENT TERMS................................................3

IV.    THE SETTLEMENT MERITS FINAL APPROVAL ......................................4

      A.     THE SETTLEMENT IS PRESUMED TO BE FAIR............................. 5

      B.     ALL OF THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL........... 6

            1.     The Risk, Expense, Complexity and Likely Duration of Continued Litigation Favor Final Approval ..............................................6

            2.     The Amount Offered in Settlement Favors Final Approval ......................9

            3.     The Extent of Discovery Completed and the Stage of the Proceedings Support the Settlement ................................................10

            4.     The Experience and Views of Class Counsel Favor Final Approval.........10

            5.     The Class Members' Reaction Favors Final Approval............................11

V.     THE PARTIES FULLY IMPLEMENTED THE COURT-ORDERED NOTICE PROGRAM AND THE CLAIMS ADMINISTRATOR'S PAYMENT SHOULD BE APPROVED ................................................11

VI.    FINAL CLASS CERTIFICATION IS APPROPRIATE....................................12

VII.   PLAINTIFF'S REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS IS FAIR AND REASONABLE ......................................................13

      A.     THE RESULTS ACHIEVED ......................................... 14

      B.     THE RISK OF LITIGATION.......................................... 14

      C.     THE SKILL REQUIRED AND the QUALITY OF WORK................................ 15

      D.     THE CONTINGENT NATURE OF THE FEE AND THE FINANCIAL BURDEN BORNE BY PLAINTIFF ....................................... 15

      E.     AWARDS MADE IN SIMILAR CASES ............................. 16

      F.     THE FEE REQUEST ALSO COMPORTS WITH OTHER COURTS'

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

AWARDS UNDER THE LODESTAR APPROACH ........................................ 17

G.    CLASS COUNSEL'S COST ARE REASONABLE AND WERE

INCURRED TO BENEFIT THE CLASS ........................................................ 17

H.    THE    REPRESENTATIVE    PLAINTIFF    IS    ENTITLED    TO    AN

ENHANCEMENT AWARD ........................................................................... 18

VIII.   CONCLUSION ................................................................................................ 19

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 12, 13

*Barcia v. Contain-A-Way, Inc.*,
   2009 U.S. Dist. LEXIS 17118 (S.D. Cal. Mar. 6, 2009) ...................................... 11, 18

*Bellows v. NCO Fin. Sys.*,
   2008 U.S. Dist. LEXIS 103525(S.D. Cal. Dec. 2, 2008) ........................................ 5, 10

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..................................................................................................... 13

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal., 1979) ........................................................................... 10

*Brinker v. Super.Ct.*,
   *165 Cal.Ap*p. 4th 25 (2008) ..................................................................................... 8, 9

*C.f., In re Quantim Health Resources, Inc., Sec. Litig.*,
   962 F.Supp. 1254 (C.D. Cal. 1997) ........................................................................... 14

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) .................................................................................................... 13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 8

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................................................... 19

*Early v. Sup. Ct.*,
   79 Cal.App.4th 1420 (2000) ...................................................................................... 14

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
   30 Cal.4th 1037, 1054 (2003) ...................................................................................... 6

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
   307 F.3d 997 (9th Cir. 2002) ...................................................................................... 14

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222, 1229 (9th Cir. 1989) ............................................................................ 6

*Gilhuly v. Kmart Corporation*,
   Case No. 10-CV-00360-PJH (N.D. Cal. October 24, 2012) ...................................... 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 4, 12, 16, 17

*In re Activision Sec. Litig.*,
   723 F. Supp. 1378 (N.D. Cal. 1989) .......................................................................... 16

*In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*,
   55 F.3d 768 (3rd Cir. 1995) .......................................................................................... 6

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

*In re GNC Shareholder Litig.,*
   668 F. Supp. 450 (W.D. Pa. 1987) ........................................................... 18

*In re Heritage Bond Litig.,*
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ........................ 14

*In re Mego Financial Corp. Sec. Litig.,*
   213 F.3d ...................................................................................................... 16

*In re Omnivision Techs.,*
   559 F.Supp. 2d 1036 (N.D. Cal. 2007) ............................................... 13, 14

*In re Quantum Health Resources, Inc. Sec. Litig.,*
   962 F. Supp. 1254  (C.D. Cal. 1997) ....................................................... 15

*In re United Energy Corp. Sec. Litig.,*
   1989 U.S. Dist. LEXIS 19146 (C.D. Cal. Mar. 9, 1989) ........................ 17

*In re Warner,*
   618 F. Supp. 735 (1985) ........................................................................... 18

*Kullar v. Foot Locker Retail, Inc.,*
   168 Cal.App.4th 116 (2008) ....................................................................... 6

*Lealao v. Beneficial California,*
   82 Cal.App.4th ........................................................................................... 14

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998) .............................................................. 5, 16

*McPhail v. First Command Fin. Planning, Inc.,*
   2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ........................ 13

*Morris v. Lifescan, Inc.,*
   54 Fed. Appx. 663 (9th Cir. Cal. 2003) ................................................... 16

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) .................................................................................. 12

*Munoz v. BCI Coca-Cola Bottling Co. of L.A.,*
   186 Cal. App. 4th 399 (2010) ..................................................................... 6

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
   688 F.2d 615 (9th Cir. 1992) ...................................................................... 5

*Otero v. Rent-A-Center, Inc.,*
   (L.A. Super. Ct. 2000) No. BC217038 ..................................................... 17

*Powers v. Eichen,*
   229 F.3d 1249 (9th Cir. 2000) ................................................................. 16

*Romero v. Producers Dairy Foods, Inc.,*
   2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 13, 2007) ........................ 16

*See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 5, 11

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

*Serrano v. Priest,*
20 Cal.3d 25 (1977) ........................................................................................ 14

*Smith v. Krispy Kreme Doughnut Corp.,*
2007 U.S. Dist. LEXIS 2392 (M.D.N.C. Jan. 10, 2007) .......................... 17, 18

*Staton v. Boeing Company,*
327 F.3d 938 (9th Cir. 2003) ......................................................... 4, 8, 13

*Van Vraken v. Atlantic Richfield Co.,*
901 F. Supp. 294 (N.D. Cal., 1995) .............................................................. 19

*Vasquez v. Coast Valley Roofing, Inc.,*
266 F.R.D. 482 (E.D. Cal. 2010) ............................................................. 5, 16

*Wershba v. Apple Computer, Inc.,*
91 Cal. App.4th 244 (2001) ........................................................................ 17

*Williams v. MGM-Pathe Comm. Co.,*
129 F.3d 1026 (9th Cir. 1997) .................................................................... 16

*Young v. Katz,*
447 F.2d 431 (5th Cir. 1971) ......................................................................... 6


**Business & Professions Code**
Cal. Bus. & Prof. Code
§§17200-17208 .............................................................................................. 2

**Labor Code**
Labor Code
Section 2699 .................................................................................................. 2

**Treatises & Secondary Resources**

1 Alba Conte, *Attorney Fee Awards*
§ 1.09 (3d ed. 2004) ............................................................................. 15, 17

**Newberg**
*Newberg on Class Actions*
§ 14.6 (4th ed. 2007) ................................................................................... 16

**Federal Rules of Civil Procedure**
Fed. R. Civ. P.
23(b)(3) ........................................................................................................ 12

Fed. R. Civ. P.
23(b)(3)(D) ................................................................................................... 12

Fed. R. Civ. P.
Rule 23(c)(2)(B) ........................................................................................... 12

Fed. R. Civ. Proc.
23(e) ............................................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**<u>Manual for Complex Litigation</u>**

*Manual for Complex Litigation*

   § 21.61 (4th ed. 2008) ............................................................................................................ 4

Manual for Complex Litigation,
   §21.632 (4th ed. 2004) ........................................................................................................ 12

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement

SCOTT COLE & ASSOCIATES, APC<br>ATTORNEYS AT LAW<br>THE TOWER BUILDING<br>1970 BROADWAY, NINTH FLOOR<br>OAKLAND, CA 94612<br>TEL: (510) 891-9800

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The proposed Settlement Agreement,[1] preliminarily approved on August 26, 2013,[2] is a fair compromise for the conditionally-certified class of Kraft Foods Global, Inc.'s ("Defendant" and/or "Kraft Foods") route salespersons. Through extensive investigation and exchange of information prior to settlement negotiations, the parties had a full opportunity to evaluate the value of the claims at issue. The result, reached at mediation, is a Settlement Fund of $900,000, entitling more than one hundred Class Members to recovery. Plaintiff's counsel, Scott Cole & Associates, APC ("SCA" or "Class Counsel") believes that this Settlement better serves the class than further litigation, with its attendant risks.

As the final step in the settlement process, Plaintiff requests that this Court enter an Order granting final approval of the parties' class action settlement.

### II.     PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

On April 25, 2012, Representative Plaintiff, a route salesperson, filed a lawsuit against Kraft Foods on behalf of all persons employed as route salespersons in the State of California from April 25, 2008 through the present (the "Class Period"). The action was removed to the United States District Court, Northern District of California on June 4, 2012. [3]

In the Complaint, Plaintiff alleged that Defendant wrongfully classified Class Members as exempt employees since they were strictly paid on commission, although their duties as route salespersons did not meet the criteria for overtime exemption.[4] As such, Defendant has had a consistent policy of permitting, encouraging and/or requiring Class Members to work in excess of eight hours per day and in excess of forty hours per week without paying them overtime compensation, a class-wide employment policy that deprives Class Members of wages. Plaintiff also

---

[1] A true and correct copy of the fully executed Settlement Agreement ("Settlement") is attached as Exhibit "A" to the Declaration of Hannah R. Salassi, Esq. in Support of Plaintiff's Motion for Final Approval ("Salassi Decl."), filed concurrently herewith. Unless otherwise noted, all exhibits referenced herein are attached to the Salassi Decl.
[2] *See* ECF Docket No. 43.
[3] Salassi Decl. ¶ 3.
[4] *See* EFC Docket No. 1, Exhibit A.

1   alleges Defendant unlawfully failed to provide Plaintiff and the Class Members statutorily mandated

2   meal and rest periods, and willfully failed to provide Plaintiff and the Class Members with accurate

3   semi-monthly itemized wage statements. Plaintiff also alleges that Defendant's knowing conduct

4   constitutes an unlawful and/or fraudulent business practice, as set forth in Cal. Bus. & Prof. Code

5   §§17200-17208, and includes a claim for penalties under California's Private Attorneys in General

6   Act of 2004 ("PAGA"), codified as Labor Code section 2699 *et seq.* [5]

7        The parties completed both formal and informal discovery prior to reaching a settlement.

8   Class Counsel reviewed documents produced by Defendant including the route salesperson job

9   description, compensation structure, Defendant's handbook, route training manual, written policies

10  regarding meal and rest periods, and timesheets, which confirmed Kraft Foods class-wide

11  employment policy of classifying all Class Members as exempt employees.[6] In addition, interviews

12  with Class Members indicated they regularly worked more than eight hours per day and more than

13  forty hours per week, never received overtime wages nor received their statutorily mandated meal or

14  rest periods.[7] Plaintiff alleges the route salespersons responsibilities and daily tasks do not meet any

15  criteria for exemption as they spent the majority of their time driving, delivering, and stocking Kraft

16  product—mundane tasks that left them with little or no time to conduct sales.[8]

17        In addition to the information outlined above, prior to mediation, Defendant provided

18  Plaintiff with the additional data points needed to complete a damages analysis, including number of

19  Class Members, average wage, number of workweeks and date the business was acquired by Nestle,

20  which ended the Class Period.[9]

21        On January 8, 2013, the parties attended a full-day mediation session with Alan Burkowitz.[10]

22  The pre-mediation discovery and informal data exchange allowed Plaintiff to intelligently weigh the

23  theoretical value of the Class Members claims against the likelihood of class certification.[11] The

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

[5]     *See* ECF Docket No. 1, Exhibit A.
[6]     Salassi Decl. ¶ 4.
[7]     Salassi Decl. ¶ 5. *See also*, ECF Docket No. 29-2, Exhibits F - G.
[8]     Exhibit "B," Declaration of Representative Plaintiff Gilbert Salinas in Support of Plaintiff's Motion for Final Approval ("Salinas Decl."). ¶¶ 6-10.
[9]     Salassi Decl. ¶ 6; Exhibit "J," Declaration of Greg Frenette ("Frenette Decl.") ¶ 2.
[10]    Salassi Decl. ¶ 7.
[11]    Salassi Decl. ¶ 8.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1  parties were unable to reach an agreement, but continued negotiations over the following weeks. On

2  or about February 9, 2013, the parties finally reached an agreement in principle. The parties only

3  reached an agreement as to the final settlement terms after several more months of bilateral

4  negotiations. By June 7, 2013, all named parties and their respective counsel had executed the

5  original settlement agreement and agreed to its terms.[12]

6

7  **III.    SUMMARY OF SETTLEMENT TERMS**

8  The Settlement encompasses all claims asserted by the Representative Plaintiff on behalf of a

9  class of all persons employed as exempt route salespersons by Defendant, in one or more of its Kraft

10 Pizza Company locations in California during any portion of the period from April 25, 2008 through

11 the date which the Court grants final approval of the Settlement ("Class Members"). In exchange for

12 a release from liability tailored to the claims raised here, the Settlement requires Defendant to pay up

13 to $900,000 to those Class Members who do not request exclusion, an Enhancement Award of up to

14 $5,000 to Plaintiff for his service to the class, as well as Plaintiff's attorneys' fees totaling up to 33

15 1/3 % of the Gross Settlement Fund (i.e. $299,700). In addition the settlement requires that

16 Defendant pay for Plaintiff's actual costs, the settlement administration fees and expenses,

17 Defendant's share of the payroll taxes associated with the monies distributed pursuant to the

18 settlement, and the release of PAGA claims (the Parties have agreed to allocate $2,000).[13]

19 Each member of the Settlement Class is entitled to receive a pro rata portion of the Net

20 Settlement Fund. The pro-rata portion is based upon the number of weeks he/she worked for

21 Defendant during the Settlement Period, defined as the period from April 25, 2008, to the date of

22 preliminary approval, inclusive; divided by the total number of workweeks worked by all Class

23 Members during said period.[14] The money initially allocated to members of the Plaintiff Class who

24 submit timely opt-out forms will be allocated to the *cy pres*, as well as those settlement checks not

25 cashed before the Void Date.[15]

26

27 [12]    Salassi Decl. ¶ 9.
   [13]    Exhibit "A," Settlement.

28 [14]    Exhibit "A," Settlement, ¶ 26(c).
   [15]    *Id*, ¶¶ 26, 43.

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement

The Parties also agree that one-third of the Individual Settlement Share that is distributed to each Qualified Claimant will be considered penalties, one-third will be considered interest, and the remaining one-third will be considered wages. All members of the Plaintiff Class who do not timely request exclusion will be deemed to have fully released Defendant from the claims that were alleged in this suit and those that could have been alleged based on Plaintiff's factual allegations, for the period of April 25, 2008 to the date of preliminary approval, inclusive.[16]

In exchange for the consideration outlined above, the Settlement Class will release all claims alleged in the litigation during the relevant time period, as well as wage and hour class claims which could have been brought based on the specific factual allegations contained in the Complaint. The released claims directly relate to the factual allegations articulated in Plaintiff's operative Complaint.[17]

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

When evaluating a motion for final approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure, a court's inquiry focuses upon whether the settlement is "fundamentally fair, adequate, and reasonable." Fed. R. Civ. Proc. 23(e); *Staton v. Boeing Company,* 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *accord Manual for Complex Litigation* ("*Manual*") (4th ed. 2008) § 21.61 at 308. A settlement is "fair, adequate and reasonable," and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Id.* at 462. As the *Hanlon* Court noted, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions and proof." *See Hanlon*, 150 F.3d at 1026. Nevertheless, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

[16] *Id.* ¶¶ 37, 44.
[17] *Id.* ¶¶ 16, 38, 43.

overreaching by, or collusion between, the negotiating parties...." *Id.* (citing *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1992)).

To determine whether a proposed class action settlement is fair, reasonable, and adequate, courts in the Ninth Circuit consider factors such as: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and view of counsel; and the reaction of the class members to the proposed settlement. *See Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 488 (E.D. Cal. 2010) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

### A.  THE SETTLEMENT IS PRESUMED TO BE FAIR

Where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *Bellows v. NCO Fin. Sys.,* 2008 U.S. Dist. LEXIS 103525, *18 (S.D. Cal. Dec. 2, 2008). The presumption of fairness applies here: Class Counsel commenced a vigorous written discovery campaign before entering into the mediation process, including propounding special interrogatories and requests for documents related to Plaintiff's claims of misclassification under California law. Class Counsel meticulously reviewed the documents received including the employee handbook, written policies on meal and rest breaks, Defendant's compensation structure, route training manual, the route salesperson job description, and timesheets, and conducted witness interviews. Moreover, the settlement was reached by capable counsel, using an experienced negotiator. In light of these facts, the settlement is presumptively fair, and, as explained below, each of the relevant factors support final approval. [18]

### B.  ALL OF THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL

Plaintiff based his claims on the theory that Kraft Foods misclassified the Class Members under California law, which deprived Class Members of adequate compensation and meal and/or rest

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

[18]   Salassi Decl. ¶¶ 4-5, 7, 16-17.

periods. Plaintiff's counsel investigated the class claims, conducted formal and informal discovery, and weighed the strength of the evidence against Defendant's potential defenses.

### 1. The Risk, Expense, Complexity and Likely Duration of Continued Litigation Favor Final Approval

First, the court should weigh the benefits of the Settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Munoz v. BCI Coca-Cola Bottling Co. of L.A.*, 186 Cal. App. 4th 399 (2010) (*quoting Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008). ("[T]he trial court may not determine the adequacy of a class action settlement 'without independently satisfying itself that the consideration being received for the release of the class members' claims is reasonable in light of the strengths and weaknesses of the claims and the risks of the particular litigation.'").

The policy under California law that favors and encourages settlement of class actions and other complex cases is applicable. here. California jurists recognize "an overriding public policy favoring settlement of class actions." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003) (Kennard, J., concurring) (*citing Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the compromise and settlement of disputes")); *see also In re General Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 805 (3rd Cir. 1995). The alternative to a class action – i.e., individual litigation – could tax private and judicial resources over a period of years and, given the relatively modest amount of damages each class member allegedly incurred, would be uneconomical even for those with the finances, sophistication and tenacity to secure individual legal representation.

This Settlement, on the other hand, provides to *all* Class Members, regardless of their means, the opportunity for a monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and the resultant recovery of nothing at all. The Settlement represents a fair compromise of the issues in this case, based on the following factors:[19]

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL. (510) 891-9800

---

[19]   Salassi Decl. ¶ 12.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

- Route salespeople deliver Kraft pizza products from a central storage facility in California to third party convenience and grocery stores on their pre-assigned routes. Each route salesperson drives store to store, where he/she checks the existing inventory, determines how much additional product is needed, unloads the required amount from the truck and puts it away in its proper location. Given the responsibilities of their job, route salespersons spend the majority of their job delivering Kraft products and performing other non-sales-related tasks. Notably, in 2010, when Nestle acquired Kraft Pizza Company, they reclassified the route salesperson position from exempt to non exempt even though nothing about the requirements of the job changed. [20]

- Even given the apparent uniformity of the route salesperson position, obtaining certification of a misclassification case is often an uphill battle, with Defendant arguing that the job of route salesperson is "similar to managing their own business" and includes 1) increasing sales to existing accounts and 2) selling new accounts.[21] Defendant would argue that determining whether any one employee was misclassified requires an individualized inquiry. As a result, there is a substantial risk the case would never even reach the liability phase. The risk of denial of class certification is one factor requiring a discount to the potential value of the claims alleged.

- In addition, because employers have no obligation to record rest periods, the relative lack of written proof would have diminished the prospect of certifying the rest break claim.

- Even if the class were certified, proving that Defendant knew and/or intended that the requirements of the position did not encompass any exempt work would be a difficult

---

[20]     Exhibit "B," Salinas Decl. ¶¶ 2, 8-10.
[21]     Exhibit "C," Kraft Foods Position Specification for Route Sales Representatives, Bates Nos. KRAFT-SAL000139-140.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

task. The route sales person job description produced by the Defendant specifically states that route salespersons are responsible for making new sales.[22]

- Kraft has a meal and rest break policy that complies with California Law and employees acknowledge receipt of those policies.[23]

- Plaintiff's claims could be found to be preempted by the Motor Carrier Act.[24]

- The Supreme Court's decision in *Brinker v. Super.Ct.*, 165 Cal. App. 4th 25, 21 (2008) helped clarify California meal and rest break law, but held that employers "need only provide [meal breaks] and not ensure they are taken"), meaning Plaintiff would have the burden of showing he and the Class Members were unable to take breaks because the nature of their work precluded it, not because they chose to continue working in order to make more sales, and Defendant knew or should have known that the job requirements had this effect.

- Section 203 of the California Labor Code arguably requires a willful failure to pay wages, and in light of the difficulties associated with establishing a common policy of paying wages after they are due, the value of the claim had to be discounted.

- PAGA penalties are discretionary, and there is a lack of published cases giving guidance on applying and approving PAGA awards, decreasing the value of Plaintiff's claims thereunder.

Finally, as this Court knows, "the law wisely favors settlement," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Staton*, 327 F.3d at 952 ("rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk"). These concerns apply in a case such as this, where without the class action procedure many of the Class Members would not be able to find representation and would not obtain relief. The

---

[22]   *Id.*
[23]   Exhibit "D," Kraft Foods Meal & Rest Periods Acknowledgment, Bates Nos. KRAFT-SAL000097-102.
[24]   Exhibit "E," Letter from Kraft's Chief Counsel, Burton L. Reiter to Van Bui from the U.S. Department of Labor, dated September 16, 2005, Bates Nos. KRAFT-SAL000130-138.

Settlement guarantees all class members an opportunity for monetary recovery, promptly and efficiently.

### 2.     The Amount Offered in Settlement Favors Final Approval

The $900,000 settlement is a non-reversionary recovery that provides fair compensation to the Class Members for the wage and hour claims here. *See West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, *15 (E.D. Cal. Oct. 20, 2006).

The Settlement is being provided to a small class of approximately 131 members. Based on the data provided by the Settlement Administration, the highest for the class members is $5,351.18, and this is the amount the majority of the Class Members will receive.[25] The settlement amounts are pro-rata, based upon the number of weeks each Class Member worked during the Settlement Period, divided by the total number of workweeks worked by all Class Members during said period. The settlement takes into consideration the risk factors discussed above, including difficulties in obtaining class certification in a misclassification case, the lack of rest period records, the challenge of proving Defendant's knowledge and/or intent regarding the amount of time Class Members spent on exempt tasks, establishing how often Class Members missed meals or breaks, the *Brinker* decision, and section 203's willful failure to pay wages requirement. The Settlement represents a substantial portion of Defendant's maximum exposure, discounted by the risks of losing certification and/or liability, the expense of further litigation and the interest of providing Class Members with a guaranteed recovery, quickly.

In fact, by comparison with settlements in comparable cases, the recovery obtained here is a great result. The Settlement Administrator's estimated per work week value is $57.45.[26] By comparison, courts in other misclassification cases have approved awards of less than $15 per workweek. *See, Gilhuly v. Kmart Corporation*, Case No. 10-CV-00360-PJH (N.D. Cal. October 24,

---

[25]     Exhibit "F," Declaration of Jacqueline Hitomi with Respect to Notification and Settlement Administration ("Hitomi Decl.") ¶ 14.

[26]     *Id.*; Salassi Decl. ¶ 13.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

2012) (approving $14.48 value per work week); *In re Sleep Train Wage and Hour Cases*, Judicial Council Coordination Proceeding No. 4553 (S.F. Super. Ct. 2011) (approving $9.30 per workweek).

### 3. The Extent of Discovery Completed and the Stage of the Proceedings Support the Settlement

Courts also consider the extent of discovery completed and the stage of proceedings in determining the fairness, adequacy and reasonableness of a settlement. *See Weeks*, 2011 U.S. Dist. LEXIS 155472, *55-56; *Bellows*, 2008 U.S. Dist. LEXIS 103525 at *8. Here, as discussed in detail, *infra*, Class Counsel interviewed numerous Class Members regarding all aspects of their position, as well Kraft Foods' policies and procedures, including the employee handbook, compensation structure, route training manual, the route salesperson job description, and time card reports. The parties had a "clear view of the strengths and weaknesses of their cases" at mediation, and the settlement amount and terms were reached based on the parties' informed analysis of the strengths and weaknesses of this case. *Bellows*, 2008 U.S. Dist. LEXIS 103525 at *8 (internal punctuation omitted).

### 4. The Experience and Views of Class Counsel Favor Final Approval

Class Counsel possesses extensive knowledge and expertise in the legal issues affecting the class, is very aware of the attendant risks of class action litigation, and is otherwise well-suited to evaluate the Settlement.[27] The endorsement of qualified and well informed counsel of a settlement as fair, adequate and reasonable is entitled to significant weight. *See Bellows,* 2008 U.S. Dist. LEXIS 103525 at *8 (citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal., 1979). ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.")); *West*, 2006 U.S. Dist. LEXIS 76558 at *17-18 (in class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with similar cases). Based on its expertise in this area of the law, Class Counsel supports the Settlement as fair, adequate, reasonable and, most importantly, in the best interests of the class.[28]

---

[27] Salassi Decl. ¶¶ 16-17.
[28] Salassi Decl. ¶¶ 14-15.

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**5.    The Class Members' Reaction Favors Final Approval**

Here, the Class Members' responses to the preliminarily approved settlement support its approval. The notice was provided in a manner designed to give the best notice practicable, in accordance with the terms of the settlement agreement preliminarily approved by the Court, and fully protected the due process rights of the Class Members. To date, none of the Class Members have opted out, meaning 100% of the Class will participate in the Settlement. Finally, *not a single objection was made to the Settlement*.[29] This "provides further support for final approval of the Proposed Settlement... [and] **raises a strong presumption** that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telcoms. Coop.*, 221 F.R.D. at 529 (emphasis added); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17118 (S.D. Cal. Mar. 6, 2009) ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement."). In fact, "[t]he lack of objections to the settlement is perhaps the most significant factor weighing in favor of settlement." *West*, 2006 U.S. Dist. LEXIS 76558 at *19-20. After full disclosure, the Class Members' response to the Settlement fully supports the conclusion that it is fair, adequate and reasonable. All factors considered, the Settlement merits final approval by this Court.

**V.    THE PARTIES FULLY IMPLEMENTED THE COURT-ORDERED NOTICE PROGRAM AND THE CLAIMS ADMINISTRATOR'S PAYMENT SHOULD BE APPROVED**

Applicable statutory and case law vests the Court with broad discretion in fashioning an appropriate notice program. *See* Fed. R. Civ. P. 23(e)(1). "The class notice must be (1) reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections and (2) must satisfy the content requirements of Rule 23(c)(2)(B)." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In connection with its Order granting preliminary approval of the Settlement, this Court approved the notice program and form of notice; both have now been fully implemented.[30]

---

[29]    Exhibit "F," Hitomi Decl. ¶¶ 6-13.
[30]    *See generally* Exhibit "F," Hitomi Decl.; *see also* Exhibit "J," Frenette Decl. ¶ 4.

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement

For the complete notice and administration project, including the future processing of claim forms, the Settlement Administrator is requesting payment of $11,500.00, which includes all work to conclude its duties and responsibilities pursuant to the Settlement: 1) calculate the Settlement Payments, 2) issue and mail the Settlement Payment checks, 3) report tax information, 4) answer Class Member questions, etc.[31] This amount is reasonable given the thoroughness of the services provided and results obtained.

## VI.    FINAL CLASS CERTIFICATION IS APPROPRIATE

In connection with final approval, the Court should affirm its preliminary finding that the proposed settlement class is a proper class for settlement purposes. *See* Manual for Complex Litigation, (4th ed. 2004) §21.632; *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The Court can certify a settlement class where the Court has determined that the proposed class and proposed class representatives meet the four prerequisites in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Rule 23(b). *See also Hanlon*, 150 F.3d at 1019. Certification of a class action for monetary relief requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In certifying a settlement class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see* also Fed. R. Civ. P. 23(b)(3)(D).

In the Preliminary Approval Order, this Court concluded that the requirements to a settlement class certification under Rule 23 have been met. The parties' disagreement as to the propriety of a contested litigation class in this case does not preclude certification of the Settlement Class as "there [will] be no trial." *Amchem*, 521 U.S. at 620. Consequently, the Court should finally certify the proposed Settlement Class.

---

[31]    Exhibit "F," Hitomi Decl. ¶ 15.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## VII.   PLAINTIFF'S REQUESTED ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARD ARE FAIR AND REASONABLE

Plaintiff requests an award of attorneys' fees of 33 1/3 % of the Gross Settlement Fund (i.e. $299,700), actual costs and an enhancement award of $5,000. Courts in the Ninth Circuit have articulated several factors which may be relevant to the valuation of the reasonableness of a fee request. These include (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *McPhail v. First Command Fin. Planning, Inc.,* 2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) (quoting *In re Omnivision Techs.,* 559 F.Supp. 2d 1036, 1046, (N.D. Cal. 2007). Public policy promotes approval of reasonable fee requests since "[t]he function of an award of attorneys' fees is to encourage the bringing of meritorious ... claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (internal quotation marks and citations omitted).

Courts recognize two methods for calculating attorneys' fee awards in connection with class action settlements. The more prevalent "common fund" method calculates attorneys' fees based on a percentage of the benefit to the class.[32] The "lodestar-plus-multiplier" method uses class counsel's "lodestar"– determined by multiplying the hours counsel expended by their hourly rates – enhanced by a multiplier. It is well settled in the Ninth Circuit that "[i]n a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award." *See In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, *59 (C.D. Cal. June 10, 2005) (citing *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002)).

---

[32]   "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.'" *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)(citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "Thus, the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

1    As explained below, Plaintiff's request for 33 1/3 % of the Gross Settlement Fund ($299,700)

2    which represents a small multiplier of 1.12 to Class Counsel's combined lodestar of approximately

3    $266,837.00, meets the reasonableness factors for an attorney fee award.

4

5    **A.    THE RESULTS ACHIEVED**

6    The overall result and benefit to the class from the litigation is the most critical factor in

7    granting a fee award. *In re Omnivision,* 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007). Attorneys' fees

8    and costs should be paid to class counsel based on the value of the common benefit made available

9    to the class. *Lealao v. Beneficial California,* 82 Cal.App.4th 19, 28-36, 50-51 (noting that percentage

10   of the fund awards are appropriate in cases where the common benefit to the class can be quantified);

11   *Early v. Sup. Ct.,* 79 Cal.App.4th 1420, 1435-36 (2000); *Serrano v. Priest,* 20 Cal.3d 25, 35-40

12   (1977). In measuring the value of the common benefit to the class, courts typically look at the total

13   settlement figure. *Lealao,* 82 Cal.App.4th at 28-36, 50-51; *Serrano,* 20 Cal.3d at 35-40. Here, the

14   Settlement made a **non-reversionary** fund of $900,000 available to the approximately 131 Class

15   Members covered by the Settlement.

16

17   **B.    THE RISK OF LITIGATION**

18   Although the matter came to an early resolution, this is not a case where recovery of a

19   substantial settlement and attorneys' fees was a foregone conclusion. *C.f., In re Quantim Health*

20   *Resources, Inc., Sec. Litig.,* 962 F.Supp. 1254 (C.D. Cal. 1997). Class Counsel evaluated the risks

21   inherent in the litigation such as the potential denial of class certification and Defendant's possible

22   success in proving it properly classified the Class Members as exempt. Had this case proceeded to

23   trial, liability and damages would have been hotly contested and likely appealed. The risk that

24   further litigation might result in Plaintiff and the Class not obtaining any recovery, particularly in a

25   case involving complicated legal issues such as this one, is a significant factor in the award of fees.

26   *In re Omnivision,* 559 F.Supp.2d at 1047.

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## C.   THE SKILL REQUIRED AND THE QUALITY OF WORK

Class Counsel has demonstrated the requisite skill and competency to justify the fee award sought in the instant matter. Class Counsel has prosecuted scores of wage and hour class actions and is devoted almost exclusively to the prosecution of complex civil and class action litigation such as this.[33] Class Counsel developed a robust factual record and put significant resources into analyzing the data and convincing Defendant of its exposure in this case. Class Counsel's collective skills and abilities were essential to reaching the settlement.

## D.   THE CONTINGENT NATURE OF THE FEE AND THE FINANCIAL BURDEN BORNE BY PLAINTIFF

The contingent nature of Class Counsel's compensation also militates in favor of Plaintiff's attorneys' fee request. District Courts within the Ninth Circuit recognize that "[t]he rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 at 1257 (C.D. Cal. 1997). "The underlying premise is the existence of risk - - the contingent risk of non-payment." *Id*. at 1257. "Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *Id.* (citing 1 Alba Conte, *Attorney Fee Awards* (3d ed. 2004) § 1.09).

From the outset, the prosecution of this case has involved significant financial risks for Class Counsel. Class Counsel undertook this matter solely on a contingent basis, with no guarantee of recovery of fees or even reimbursement of costs, no matter how long the litigation lasted.[34] While Class Counsel believes that the claims in this case are meritorious, it recognizes the factual and legal challenges involved, making Class Counsel's success all the more contingent.

In addition, Class Counsel's commitment to this litigation should not be assessed in a vacuum. The time Class Counsel spent on litigation and the settlement process prevented it from pursuing other work at the same hourly rates reflected in Class Counsel's lodestar. Class Counsel

---

[33]   Salassi Decl. ¶ 16; Exhibit "G," SCA's Professional Resume.
[34]       *Id.* ¶ 19.

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement

1   devoted over 700 hours to litigating this action against Defendant.[35] Those hours represent additional

2   work Class Counsel could have taken, but for its investment in this case.

3

4   ### E.        AWARDS MADE IN SIMILAR CASES

5         The attorneys' fee award sought by Class Counsel, which is 33 1/3% of the settlement fund,

6   is soundly within the range approved by other district courts in similar cases within the Ninth

7   Circuit. While the typical benchmark is 25%, courts routinely grant requests of approximately 1/3

8   when warranted by the circumstances of the case. *See, e.g., Williams v. MGM-Pathe Comm. Co.,* 129

9   F.3d 1026, 1027 (9th Cir. 1997); *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). *See*

10  *Romero v. Producers Dairy Foods, Inc.,* 2007 U.S. Dist. LEXIS 86270, *10 (E.D. Cal. Nov. 13,

11  2007) (approving 33% attorney fee award and noting "fee awards in class actions average around

12  one-third of the recovery") (*quoting Newberg on Class Actions* § 14.6 (4th ed. 2007)); *Morris v.*

13  *Lifescan, Inc.,* 54 Fed. Appx. 663, 664 (9th Cir. Cal. 2003) (approving 33% fee award where "[t]he

14  district court noted that class counsel achieved exceptional results in this risky and complicated class

15  action and despite [defendant's] vigorous opposition throughout the litigation"); *In re Activision Sec.*

16  *Litig.,* 723 F.Supp. at 1378 (upholding a 30% fee); *Linney v. Cellular Alaska P'ship,* 1997 U.S. Dist.

17  LEXIS 24300 at *20 ("Courts in this district have consistently approved attorneys' fees which

18  amount to approximately one-third of the relief procured for the class.").[36]

19        In this case, a fee percentage of 33 1/3% is warranted for a number of reasons. First, Class

20  Counsel obtained an excellent result for the class, a non-reversionary settlement that provides each

21  Class Member with a per workweek recovery of $57.45, which compares very favorably with

22  settlements in similar cases. *See, Gilhuly, supra,* (approving $14.48 value per work week); *In re*

23

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

24

25  [35]        Salassi Decl.¶ 20; Exhibit "H," SCA's Lodestar.

    [36]        *See also, In re Mego Financial Corp. Sec. Litig.,* 213 F.3d at 460 (affirming award of fees equal to one-

26  third of total recovery); *Schiller v. David's Bridal, Inc.,* 2012 U.S. Dist. LEXIS 80776, *52-56 (E.D. Cal. June 11,
    2012) (awarding 33.3% of the fund, and citing a list of cases where one-third is a normal percentage in wage and

27  hour class action settlements); *Buccellato v. AT&T Operations, Inc.,* 2011 U.S. Dist. LEXIS 85699, *2 (N.D. Cal.
    June 30, 2011) (citing numerous cases where a one-third fee was awarded); *Vasquez v. Coast Valley Roofing, Inc.,*

28  266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33.3% of the recovery obtained and noting five recent wage and
    hour class actions where federal district courts approved attorneys' fee awards of 30 to 33%); *In re Heritage Bond*
    *Litig.,* 2005 U.S. Dist. LEXIS 13555 (awarding class counsel a fee of 33% of the common fund).

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement

*Sleep Train Wage and Hour Cases*, *supra* (approving $9.30 per workweek). Notably, the *Gilhuly* court approved a fee award of 33 1/3%. Second, the request for 33 13% actually results in a very small multiplier (1.12) to Class Counsel's lodestar, explained in further detail below. Finally, the reaction of the class illustrates the above-average result achieved here. 100% of the Class Members participated, 0 opted-out and 0 objected. This overwhelmingly positive response came after the Class Members were notified of Class Counsel's fee request, and demonstrates the full approval of the Class.

## F. THE FEE REQUEST ALSO COMPORTS WITH OTHER COURTS' AWARDS UNDER THE LODESTAR APPROACH

As an alternative to the common fund theory, Courts may also use a lodestar approach, enhanced by a multiplier. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("[i]n employment...actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."). The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *See id.*

Class Counsel's total lodestar is $266,837.00. Based on the value of the settlement, the attorney fee award requested here is Class Counsel's lodestar and a small multiplier of approximately 1.12, which is well within the range found reasonable by other courts in California. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (affirming district court's conclusion that fee award of 28% of fund and 3.65 times lodestar amount was reasonable). California courts also routinely award multipliers on class counsel's lodestar. *See, e.g.*, *Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 244, 255 (2001) ("Multipliers can range from 2 to 4 or even higher"); *Otero v. Rent-A-Center, Inc.*, (L.A. Super. Ct. 2000) No. BC217038 (awarding 2.43 multiplier in wage and hour case). Class Counsel's attorneys' fee request of 33 1/3% is reasonable under either the common fund or lodestar-plus-multiplier analysis, and warrants approval.

## G. CLASS COUNSEL'S COSTS ARE REASONABLE AND WERE INCURRED TO BENEFIT THE CLASS

In the course of this litigation, Class Counsel incurred substantial costs in the form of legal and factual research, photocopies, fax, travel, postage and telephone charges, with SCA incurring

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

$6,397.94 (as of September 16, 2013), and will incur additional expenses through the completion of the distribution process including, but not limited to, photocopies, fax, postage and telephone charges.[37] The kinds of litigation costs incurred by SCA are appropriate for reimbursement in class action cases. *In re United Energy Corp. Sec. Litig.*, 1989 U.S. Dist. LEXIS 19146, *16 (C.D. Cal. Mar. 9, 1989); *Smith v. Krispy Kreme Doughnut Corp.,* 2007 U.S. Dist. LEXIS 2392, *10 (M.D.N.C. Jan. 10, 2007) ("An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved."); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The prevailing view is that expenses are awarded in addition to the fee percentage."); *In re Warner*, 618 F.Supp. 735; *In re GNC Shareholder Litig.,* 668 F.Supp. 450, 452 (W.D. Pa. 1987). The costs incurred by Class Counsel in this litigation have been reasonable and appropriate because they were necessary to protect and benefit the class, and are properly considered when evaluating Class Counsel's request.

## H.   THE REPRESENTATIVE PLAINTIFF IS ENTITLED TO AN ENHANCEMENT AWARD

The Settlement proposed a $5,000 Enhancement Award for the Representative Plaintiff, subject to this Court's approval. For public policy reasons, "a class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action." *West*, 2006 U.S. Dist. LEXIS 76558 at *26 (internal citations omitted). Compensation of class representatives "must be reasonable in light of applicable circumstances, and not 'unfair' to other class members." *See id.* at *27 (*citing Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003)). Here, Plaintiff's requested Enhancement Award is reasonable given the work he performed on behalf of the class, the damage he faces to his reputation for his participation in the litigation and the minimal effect his request will have on the amount of each Class Member's recovery.

Plaintiff contributed significantly to the resolution of this case. Among other efforts, Plaintiff produced documents, provided detailed background information to Class Counsel about the

---

[37]   Salassi Decl. ¶ 22; Exhibit "I," Cost Journal.

organizational structure of the company and the job duties performed by Class Members, assisted Class Counsel in responding to discovery, reviewed documents produced by Defendant and maintained regular contact with Class Counsel throughout this litigation and settlement process.[38] *See*, *e.g.*, *Glass,* 2007 U.S. Dist. LEXIS 8476, *52 (approving $25,000 enhancement awards to four named plaintiffs who "provided a great deal of informal discovery to Class Counsel,"... "a great deal of insight into the policies and practices of UBS [and]... additional relevant detail at the final fairness hearing.") (internal citations omitted); *Barcia v. Contain-A-Way, Inc.,* 2009 U.S. Dist. LEXIS 17118, *19 (S.D. Cal. Mar. 6, 2009) (approving $25,000 incentive payment); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving $25,000 incentive payment). Class Counsel believes that this case would not have settled on the same terms, or in such a timely manner, without Plaintiff's participation and significant efforts.

Finally, the proposed Enhancement Award of $5,000 is a small fraction of the total recovery, and is not unfair to other Class Members because it will not significantly reduce the amount of settlement funds available to the rest of the class. *See West*, 2006 U.S. Dist. LEXIS 76558 at *26. Furthermore, none of the Class Members have objected to the amount of additional compensation sought by the named plaintiff, although the class notice specified the amount which would be requested on his behalf. *See id.* For all these reasons, the Court should approve Plaintiff's requested enhancement award.

## VIII.   CONCLUSION

Based upon the foregoing, the Court should enter an Order granting final approval of the parties' class action settlement.

Dated: October 9, 2013

**SCOTT COLE & ASSOCIATES, APC**

By:   /s/ Hannah R. Salassi
Hannah R. Salassi, Esq.
Attorneys for Representative Plaintiff
and the Plaintiff Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE TOWER BUILDING
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

---

[38]   Exhibit "B" Salinas Decl. ¶¶ 11-12.

Notice of Motion; Memo. of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Settlement